UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08325-WLH-RAO | Date | September 12, 2025 |
| Title | *Salim Nizar Esmail v. Kristi Noem, et al.* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|
| Holidae Crawford | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [4]**

The Court is in receipt of Petitioner's *Ex Parte* Application for a Temporary Restraining Order (the "EPA for TRO" or the "EPA"). (EPA for TRO, Docket No. 4). The Court is also in receipt of Respondent's Opposition (the "Opposition"). (Opp'n to EPA, Docket No. 7). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. For the reasons explained herein, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision. The Court **DENIES** the EPA for TRO in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

I. **BACKGROUND**

    A. **Statutory Background**

The detention and removal of noncitizens[1] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). *See* 8 U.S.C. § 1231. Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."[2] *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3). This suggests that, if a noncitizen is ultimately *not* removed, they will be placed under an Order of Supervision ("OSUP") upon release.

Certain noncitizens – including those who are removable due to certain criminal conduct – "may be detained beyond the removal period, and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6). In other words, although noncitizens under certain conditions may be detained beyond the removal period, once they *are* released, they must similarly be subject to supervision under the regulations prescribed by the Attorney General. Significantly, after the removal period passes and "after 'removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute,' [and] the noncitizens must be released." *Hoac v. Becerra*, No.

---

[1] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.

[2] Section 1231 provides that the "removal period shall be extended beyond a period of 90 days . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). There is no indication that this portion of Section 1231 is relevant for purposes of this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). In short, Section 1231 "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001).

The right to remain under an OSUP, however, is not unlimited. Revocation of an OSUP is governed by 8 C.F.R. §§ 241.13(i), 241.4(l).[3] Revocation of an OSUP may occur either: (1) if the noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Whether there is a significant likelihood that the alien may be removed in the reasonably foreseeable future is determined by assessing a series of factors, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries . . . and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." *Id.* § 241.13(f). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke

---

[3] The regulations themselves provide an explanation for the relationship between sections 241.4 and 241.13, though the distinction remains somewhat opaque. *See id.* § 241.13(b)(1). Section 241.13 specifically governs "special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [section] 241.4." *Id.* Section 241.13 further provides that "[s]ection 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. In short, Section 241.13 applies to cases where a petitioner is in revocation proceedings, whereas Section 241.4 applies to routine custody reviews for aliens detained after the 90-day removal period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

release and return to [] custody an alien previously approved for release under the procedures in this section."[4] *Id.* Whether revocation is in the public interest is assessed under four factors: "(i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.*

Significantly, there are "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and will receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.*

Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official.

### B. Findings of Fact

Petitioner Salim Nizar Esmail ("Petitioner") was born in Tanzania in 1966. (EPA for TRO ¶ 7; *see also* Docket No. 4-1, Ex. 1, Decl. of Petitioner ISO EPA for TRO

---

[4] In situations where "referral of the case to the Executive Associate Commissioner" is not reasonable, a "district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest[.]" *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

("Petitioner Decl.")).  His family moved to the United States in 1973, where Petitioner attended elementary, middle and high school in or around Santa Monica, CA.  (*Id.*).  Petitioner attended UCLA for university and completed medical school at SUNY in 1993.  (*Id.*).  Petitioner, unfortunately, suffered "a mental breakdown" and was convicted of attempted murder.  (*Id.*).  He was sentenced to 17 years in prison and, during that time, was diagnosed with bipolar disorder and began taking Zyprexin.  (*Id.*).  Petitioner was also diagnosed with HIV and "has been under constant care and supervision by his medical team."  (*Id.*).  Significantly, bipolar disorder is "a chronic mental health condition that requires consistent and closely monitored treatment[,]" and "the nature of bipolar disorder necessitates a stable and supportive environment, particularly during periods of transition or stress, which can exacerbate symptoms." (Docket No. 4-1, Ex. 4 ("Doctor Letter"[5]) at 16).  Although Petitioner has not suffered a mental breakdown in years, this is largely due to his "commendable adherence to prescribed medication and therapeutic intervention," as well as the "ongoing support of close family members, who play an essential role in monitoring medication compliance, recognizing early signs of mood changes, and providing emotional grounding." (*Id.*).  Accordingly, his ability to have "continued access to familial support" is critical for his well-being.  (*Id.*).

After his prison term, Petitioner was referred to immigration court for removal.  (*Id.* ¶ 8).  Although Petitioner was ordered removed on August 18, 2008, he was granted Deferral of Removal under the UN Convention Against Torture ("CAT").  (*Id.*; *see also* Docket No. 4-1, Ex. 2, Order from Immigrant Court Granting Deferral of Removal Under CAT ("DOR Order")).  Subsequently, on or about October 21, 2011, Petitioner was placed on an Order of Supervision ("OSUP").  (EPA for TRO ¶ 8; *see also* Docket No. 4-

---

[5] The Doctor Letter comes from Adil Esmail, M.D., Petitioner's brother.  (*See id.*).  According to his signature line, he is the Regional Chief of Orthopedics at Southern California Permanente Medical Group ("SCPMG") and an Assistant Clinical Voluntary Professor in UCLA's Department of Orthopedic Surgery.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

1, Ex. 3, Order of Supervision ("OSUP") at 9[6]).  Petitioner has complied with that OSUP for nearly 14 years, which Respondents do not contest.  (EPA for TRO ¶ 8; *see also* Docket No. 4-1, Ex. 3 ("OSUP and Check-in History") at 7-14).

On September 2, 2025, Petitioner "was arrested by ICE at his routine check-in." (*Id.* ¶ 10).  Petitioner was given a notice (the "Notice"), entitled Notice of Revocation of Release and containing the ICE seal.  (Docket No. 4-1, Ex. 5 ("Notice of Revocation of Release") at 19).  The Notice states that Petitioner's "case has been reviewed and [it was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time."  (*Id.* at 19).  The Notice further states that "[t]his decision has been made based on a review of [Petitioner's] file, his personal interview and orders provided by ICE HQ to HIS[7] [*sic*] personnel affecting the arrest."  (*Id.*).  The Notice contains no factual allegations that led to the custody redetermination.  (*See generally id.*).  Although the Notice indicates that Petitioner would "promptly be afforded an informal interview at which [he would] be given an opportunity to respond to the reasons for revocation[,]" (*id.* at 19), Petitioner contends that he was never given an informal interview.  (*See* Petitioner Decl.).  Indeed, there is "no documentation that this interview took place[,]" (Docket No. 4-1, Ex. 6, Decl. of Douglas Jalaie ISO EPA for TRO ("Jalaie Decl.") ¶ 8), despite the fact that there typically is such documentation.[8]

---

[6] Petitioner submitted one attachment to the EPA for TRO that contains all eight exhibits. (*See* Docket No. 4-1, Exs. 1-8).  For ease of reference, the Court refers to the PDF page numbers of that document to identify specific pages, where necessary.

[7] Petitioner explained that the unidentified SDDO officer likely meant HSI, as Microsoft word autocorrects HSI to HIS.  HSI ("HSI") stands for Homeland Security Investigations, a "subgroup or organization of ICE[.]"  (EPA for TRO ¶ 10 n.1).

[8] While Respondent contends that it is speculative that Petitioner did *not* get an informal interview, Respondent provides no evidence suggesting such an interview, in fact, *did* occur.  Where Petitioner's declaration, as well as his counsel's declaration, suggest otherwise – in addition to the fact that the Notice was unaccompanied by documentation of an informal interview – Respondent has provided the Court no reason to believe the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(*Id.* at 29) (including an example of a notice packet containing proper documentation of "alien informal interview"). The Notice itself contains an illegible signature with no printed name of the signer. (*See* Notice). Underneath the signature line is simply "SDDO" – or Supervisory Detention and Deportation Officer. (*Id.*).

Petitioner's family retained Douglas Jalaie ("Jalaie") to "represent [Petitioner] in his immigration matters." (EPA for TRO ¶ 11). On September 3, 2025, Jalaie visited Petitioner while in detention in B-18 and spoke with an SDDO ("SDDO Cordova"). (*Id.*; *see also* Jalaie Decl. ¶ 5). Jalaie learned from SDDO Cordova that Petitioner had been arrested at his check-in on suspicion of voter fraud. (Jalaie Decl. ¶ 5). After HSI arrested Petitioner, the U.S. Attorney's Office "rejected the case and did not charge [Petitioner] because [he] never actually voted[.]" (*Id.*). HSI apparently "released [Petitioner] to ICE," and SDDO Cordova represented that "once someone is in ICE custody[,] they cannot be released according to ICE headquarter['s] current policy." (*Id.*). SDDO Cordova confirmed, however, that Enforcement and Removal Operations (the "ERO") "did not have any travel document for [Petitioner]."[9] (*Id.* ¶ 6). Jalaie gave SDDO Cordova a letter from Petitioner's brother, who is a doctor, "indicating [Petitioner's] mental health issues . . . [and] begging to keep [Petitioner] as close as possible to family members, who need to visit him and ensure another mental breakdown is avoided." (*Id.*; *see also* Doctor Letter at 16). Specifically, Jalaie requested that Petitioner be transferred to the facility in Adelanto, California, for which Petitioner had been "medically cleared."

---

required interview occurred.

[9] The absence of travel documents suggests that Petitioner was not imminently to be removed. *See, e.g., Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding that even the respondents' explicitly expressed the "inten[tion] to complete a travel document request for [the] [p]etitioner [did] not make it significantly likely he [would] be removed in the foreseeable future").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(Jalaie Decl. ¶ 6). At 3:09 p.m. that day (*see* Docket. No. 1), Petitioner filed his Petition while detained in Los Angeles (EPA for TRO ¶ 4).

Nonetheless, Petitioner "was transported over 400 miles away from Los Angeles to the Eloy, Arizona ICE detention facility" later that evening." (*Id.*). In short, Petitioner "is being held in Eloy, against his will[,] for an unknown reason, or if SDDO Cordova is correct, a reason that violates the regulations." (EPA for TRO ¶ 12). Petitioner fears that he will either "(1) be detained indefinitely or (2) be removed without any due process." (*Id.*).

## II. DISCUSSION

### A. <u>Legal Standard</u>

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In determining whether to issue a TRO, courts apply the four *Winter* factors (the "*Winter* Factors"), which also guide the evaluation of a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

    **B.**    **Conclusions of Law**

The Court begins by briefly addressing jurisdiction. The Court then applies the *Winter* Factors, finding they weigh substantially in favor of granting Petitioner's EPA – at least with respect to his unlawful detention claims. For the reasons explained herein, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court **DENIES** the EPA for TRO in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

    *1.*    *The Court Has Jurisdiction over Petitioner's Habeas Petition*

As an initial matter, Respondents argue in passing that, "under 8 U.S.C. § 1252(g)'s jurisdiction-stripping provision" which prevents "judicial review of executions of final removal order[s]," this Court lacks jurisdiction. (Opp'n to EPA for TRO, Docket No. 7 at 1, 7). The provision states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This provision does not prohibit the Court from hearing Petitioner's claims here. While the Court cannot review the substance of a final order of removal, nor prohibit ICE from detaining Petitioner, that is not the relief Petitioner requests. Rather,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Petitioner seeks that: (1) "he be released unless and until he receives adequate notice and a hearing to determine the legality of his re-detention" and (2) "if [he] is to be removed to a third country, that he be informed of ICE's intention to do so and . . . an individualized opportunity to challenge removal through a reasonable fear interview[.]" (EPA for TRO at 19-20). In other words, Petitioner is "challenging his detention on statutory and constitutional process grounds, rather than challenging the order of removal itself." *Delkash v. Noem*, 5:25-cv-01675-HDV-AGR, *6 (C.D. Cal. Aug. 28, 2025) (Docket No. 18) (granting preliminary injunction requiring petitioner's release and enjoining further re-detention or removal to a third country without notice and an opportunity to be heard). Indeed, the Supreme Court has held that "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Marquez v. I.N.S.*, 346 F.3d 892, 896 (9th Cir. 2003) (holding the district court has jurisdiction over a habeas claim where the petitioner claims detention violates substantive and procedural due process rights). The Court, therefore, finds that Section 1252(g) does not preclude it from exercising jurisdiction over this action.[10]

---

[10] Furthermore, Petitioner's transfer to a facility in Arizona does not impact the Court's jurisdiction. *See Johnson v. Gill*, 883 F.3d 756, 761 (9th Cir. 2018) (explaining that, despite a transfer of custody, "habeas jurisdiction was proper in the district court [where the petitioner was originally detained] because [the petitioner] filed his petition while incarcerated [in that district]"). Petitioner filed his Petition while detained in Los Angeles. (EPA for TRO ¶ 4). His "subsequent transfer" to Eloy, Arizona "does not destroy the jurisdiction established at the time of filing." *Johnson*, 883 F.3d at 761 (citing to *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)). Accordingly, the Court has jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

   2.  *Winter Factors Support Granting Petitioner's EPA for TRO*

Turning to the *Winter* Factors, the Court finds that they weigh heavily in favor of granting Petitioner's EPA – at least with respect to his unlawful detention claims. Petitioner fails, however, to demonstrate likelihood of success on the merits with respect to his removal claim. The Court addresses each factor in turn.

   a.  <u>Likelihood of Success on the Merits</u>

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner contends in his Petition that his detention by ICE is unlawful – given the absence of paperwork "discussing his reasons for the revocation," as well as the failure to provide an "interview[] about why he should not be detained" – thereby violating the Fifth Amendment's due process requirement.[11] (Petition, Docket No. 1 at 3). Petitioner also fears that he will be "removed to a third country without notice or an opportunity to challenge the removal[,]" also in violation of the Fifth Amendment's guarantees of due process. (*Id.* at 4). The Court addresses Petitioner's likelihood of success on the merits as to his wrongful detention before briefly turning to the removal claim.

---

[11] He also contends in his Petition that the revocation of the OSUP failed to comply with applicable regulations, such that this amounts to a violation of the Administrative Procedure Act (the "APA"). (*Id.* at 3). It is well established that "[g]overnment agencies are required to follow their own regulations." *Hoac*, 2025 WL 1993771, at *4 (collecting cases) (citing *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). The APA provides that a reviewing court may hold "unlawful" any agency action that is "not in accordance with the law[,]" is "contrary to constitutional right" or "without observance of procedure required by law." 5 U.S.C. § 706. As explained herein, the Court finds that Respondents failed to follow applicable regulations required by law. Accordingly, Petitioner has also demonstrated likelihood of success on the merits with respect to his wrongful detention claim based on the APA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

          i.      *Detention Claims – Due Process Challenge*

Petitioner argues that his OSUP was revoked in violation of the regulatory safeguards intended to ensure due process for noncitizens. (EPA for TRO at 7-12). He contends that his re-detention absent notice as to why his OSUP was revoked, nor an opportunity to challenge the revocation through a prompt, informal interview, amounts to a Fifth Amendment due process violation. (*Id.*). The Court agrees.

First, the Notice that Petitioner received fails to provide the "reasons for revocation of his [] release[.]" 8 C.F.R. § 241.13(i)(3). The Notice merely provides a generic statement that Petitioner's "case has been reviewed and [it was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (*Id.* at 19). The Notice further states that "[t]his decision has been made based on a review of [Petitioner's] file, his personal interview and orders provided by ICE HQ to HIS [*sic*] personnel affecting the arrest." (*Id.*). The Notice contains no factual allegations that led to the custody redetermination. (*See generally id.*). As the Notice does not "identify any specific changed circumstances[,]" it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025); *Delkash*, 5:25-cv-01675-HDV-AGR, *8. The Notice is plainly insufficient to convey to Petitioner the grounds for revocation.[12]

---

[12] Furthermore, Petitioner highlights that, to the extent that the reason for revocation was due to a discretionary decision, such a decision would need to be made by the properly designated official. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." *Id.* Here, the Notice in question contains an illegible signature and no printed name. With respect to title of the signer, it merely includes "SDDO." (*See* Notice). This does not suggest that – in the event the reason for revocation was pursuant to an exercise

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Second, Petitioner contends he did not receive an "initial informal interview promptly" after being detained, to "afford [him] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3); (*see* EPA for TRO at 12). Respondents have failed to rebut the inference that Petitioner received no interview. Even assuming, *arguendo*, that Petitioner *had* been given an interview, given the absence of any notice as to the grounds for revocation his OSUP, Petitioner "lacked the necessary notice to enable him to meaningfully respond." (EPA for TRO at 12).

"A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures – in particular the failure to give a detainee the required notice and interview – renders the re-detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, *9 (collecting cases); *see also Hoac*, 2025 WL 1993771, at *4 ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioners is likely to succeed on his claim that his re-detainment was unlawful"). In short, "[t]hese procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a fedearl statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid"). Respondents provided no case law that suggests otherwise.[13]

---

of discretion – that it was revoked by an individual with the proper authority.

[13] Respondents cite to *Barrios v. Ripa*, to suggest that the violation of the revocation process is insufficient to justify release. No. 1:25-cv-22644-GAYLES, 2025 WL 2280485, at *2 (S.D. Fla. Aug. 8, 2025). That case is distinguishable, however, where the petitioner was given both an interview and a reason for the revocation of his OSUP. *Id.* at *2. Respondents also cite to *Ton v. Noem, et al.*, No. 5:25-cv-02033-SB-AGR (C.D. Cal. Sept. 3, 2025) (Docket No. 17) to suggest that Petitioner needed to submit additional evidence demonstrating Petitioner received no interview. That case is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Respondents unconvincingly argues that "[i]f Petitioner did not get an informal interview . . . the narrow remedy would be an informal interview[,]" rather than Petitioner's "release, as if it were a penalty imposed for any regulatory non-compliance." (Opp'n to EPA at 4). Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release. *Delkash*, 5:25-cv-01675-HDV-AGR, *9. The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP. *See, e.g., Hoac*, 2025 WL 1993771, at *7 (concluding that petitioner could only be returned to the status quo by ordering him released because "the last uncontested status of Petitioner was before he was re-detained . . .").

In sum, given Petitioner's showing that "the law and facts *clearly* favor [his] position" with respect to his wrongful detention claims, this first factor weighs in favor of granting the EPA for TRO with respect to the notice and hearing requirements for revocation of OSUP. *Garcia*, 786 F.3d at 740 (emphasis in original).

      ii. *Third Country Removal – Due Process Challenge*

Petitioner argues that he should be afforded "temporary relief from removal to a third country without ensuring a measure of due process." (EPA for TRO ¶ 28). He contends that "ICE has recently taken the position that it *may not* provide any individualized notice to the Petitioner or an opportunity to respond before he is removed

---

distinguishable, however, because the petitioner's petition was entirely silent as to whether he was interviewed or whether he was given a reason for revocation of his release. Here, to the contrary, Petitioner asserts he was not provided a reason for revocation or an interview.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

to a third country." (*Id.*) (citing Docket No. 4-1, Ex. 7 ("Noem Memo")) (emphasis added). Petitioner, therefore, requests that "*if* [Petitioner] is to be removed to a third country, that he be informed of ICE's intention to do so and that he receive an individualized opportunity to challenge removal through a reasonable fear interview." (*Id.* at 20) (emphasis added).

The Court finds a fundamental problem with Petitioner's claim regarding his potential removal to a third country, along with the relief sought. Here, the operative word is "*potential*." In short, where the injury in question appears to be entirely speculative – as there is no indication that his removal is, in fact, imminent – Petitioner lacks standing to assert this claim at this time.

Article III of the Constitution requires district courts to adjudicate only actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish standing, a plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . .[.]'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., et al.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). To establish injury in fact, a plaintiff must show he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). A plaintiff is required to show he is "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

First, Petitioner argues that, based on the language of the Noem Memo, ICE "*may not* provide any individualized notice to the Petitioner or an opportunity to respond before he is removed to a third country."[14] (EPA for TRO ¶ 28) (emphasis added). This is speculative and, to some degree, belied by the language of the Noem Memo itself. The Noem Memo states that "DHS will first inform the alien of removal to that country." (Noem Memo at 32). Furthermore, "[i]mmigration officers will refer any alien who affirmatively states a fear of removal to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*).

Second, the very framing of Petitioner's claim suggests that any due process violation is, in fact, prospective and hypothetical. Petitioner requests that "*if* [Petitioner] is to be removed to a third country, that he be informed of ICE's intention to do so and that he receive an individualized opportunity to challenge removal through a reasonable fear interview." (EPA for TRO ¶ 28) (emphasis added). There is no indication that ICE has, for example, procured travel documents for Petitioner, which *might* suggest his removal was imminent. (*See* EPA for TRO ¶ 11; Jalaie Decl. ¶ 6); *see, e.g., Hoac*, 2025 WL 1993771, at *4 (finding that, even the respondents' explicitly expressed "inten[tion] to complete a travel document request for [the petitioner] [did] not make it significantly likely he [would] be removed in the foreseeable future"). Nor has ICE "identified [a]

---

[14] To be sure, any efforts to remove Petitioner to a third country must comport with due process. ICE is required as a matter of law and protocol to afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution or torture. 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18.

safe third country of removal for [Petitioner]." (Jalaie Decl. ¶ 6). Petitioner has not averred that he was told he would be removed, either. To the contrary, SDDO Cordova told Petitioner's counsel that Petitioner was being held due to "ICE headquarters' current policy that they will not release anyone once they are detained." (*Id.*). In other words, the inference is that ICE intends to detain Petitioner – pursuant to this "current policy" – perhaps indefinitely, rather than remove him. There is nothing to suggest removal is "actual or imminent," *Lujan*, 504 U.S. at 560, nor that Petitioner is "immediately in danger of sustaining some direct injury[,]" as a result. *City of Los Angeles*, 461 U.S. at 102. "[B]ecause standing is a necessary predicate to any exercise of the Court's jurisdiction, the plaintiff and its claims have no likelihood of success on the merits, if the plaintiff lacks standing." *Arpaio v. Obama,* 27 F. Supp. 3d 185, 207 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015) (citations omitted). Given Petitioner appears to lack Article III standing to pursue this claim and the associated relief, Petitioner has not demonstrated likelihood of success on the merits with respect to this claim.[15]

    b. <u>Irreparable Harm</u>

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (". . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d

---

[15] The Court, therefore, declines to consider the remainder of the *Winter* Factors for this claim, given that the first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird*, 81 F.4th at 1042 (quoting *Env't Prot. Info. Ctr.*, 968 F.3d at 989).

976, 994-95 (9th Cir. 2017)).  Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ."  *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation – with respect to his wrongful re-detention – the Court finds this factor weighs in favor of granting the EPA.[16]  *Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6.  Furthermore, Petitioner's unique health challenges and the support he requires from his family and community further demonstrate irreparable harm in the absence of relief.  (*See generally* EPA for TRO ¶¶ 7, 9, 33-35); *see Hoac*, 2025 WL 1993771, at *6.  Accordingly, this factor weighs in favor of granting the EPA.

    c. <u>Balance of Equities and Public Interest</u>

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action."  *Hoac*, 2025 WL 1993771, at *6.  "'Just as the public has an interest in the orderly and efficient

---

[16] Respondents appear to have ignored the argument that there is a presumption of irreparable harm in the context of an alleged constitutional deprivation.  Respondents, instead, responded only to Petitioner's argument that he faces irreparable injury due to his loss of liberty and lack of access to medical care.

administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" *Id.* (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash*, 5:25-cv-01675-HDV-AGR, *10. "Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac*, 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the [OSUP] . . . and his economic and familial ties to [California]." *Id.* These factors, therefore, together weigh in favor of granting the EPA.

In short, the *Winter* Factors weigh heavily in favor of granting the EPA with respect to Petitioner's wrongful detention claims. Accordingly, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his re-detention unless and until he is provided proper due process necessary for the revocation of an OSUP.

### III. CONCLUSION

For the reasons explained herein, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court **DENIES** the EPA in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim. This TRO will expire in 14 days. A preliminary injunction hearing is set for September 26, 2025, at 11:30 a.m. Should the parties wish to submit additional briefing, Petitioner must file any opening brief and related submissions no later than September 17, 2025, at noon,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

and Respondents must file any opposing brief no later than September 22, 2025, at noon. No reply brief will be accepted. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the temporary restraining order.

**IT IS SO ORDERED.**