UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALIM NIZAR ESMAIL,<br><br>  Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>  Respondents. | Case No. 2:25-cv-08325-WLH-RAO<br><br>**ORDER RE PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION [9]** |

The Court is in receipt of Petitioner's Motion for Preliminary Injunction (the "Motion"). (Mot. for PI ("Mot."), Docket No. 9). Prior to oral argument, which was set for September 26, 2025, all parties submitted on the Court's tentative order, which is now adopted as a final order. For the foregoing reasons, the Court **GRANTS** the Motion, thereby **ENJOINING** Petitioner's further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision and **ENJOINING** Petitioner's removal to a third country without notice or the opportunity to challenge removal through a reasonable fear interview.

///

///

///

## I. BACKGROUND

### A. Statutory Background

In the Court's Order on September 12, 2025, partially granting Petitioner's *ex parte* application for a temporary restraining order (the "TRO"), the Court detailed the relevant statutory background. (*See* TRO, Docket No. 8 at 2-4). The Court incorporates that background by reference.

### B. Findings of Fact

The Court incorporates by reference the findings of fact from the TRO. (*See* TRO at 4-8). The only additional factual findings include: (1) updates regarding events that transpired after Petitioner's release on September 12, 2025; and (2) further factual findings regarding the Memorandum issued by Secretary of Homeland Security, Kristi Noem, on March 30, 2025 (the "Noem Memo"), and the related Memorandum issued by Acting Director of United States Immigration and Customs Enforcement ("ICE"), Todd Lyons, on July 9, 2025 (the "Lyons Memo"). (*See* Docket No. 9-1, Ex. 2 (the "Noem Memo") & Ex. 3 (the "Lyons Memo")).

*1. Updates Since Petitioner's Release on September 12, 2025*

Since being released, Petitioner was issued a new Order of Supervision ("OSUP") dated September 12, 2025 (the "September 12 OSUP"). (Mot., Docket No. 9-1, Ex. 1 ("September 12 OSUP") at 3[1]). Subsequently, on September 22, 2025, Petitioner was issued another new OSUP, containing revisions with respect to the applicable conditions (the "September 22 OSUP"). (Decl. of John Park ISO Opp'n to Mot. ("Park Decl."), Docket No. 12-1 ¶ 11 & Ex. A (the "September 22 OSUP")). As is relevant to this Motion, the September 22 OSUP requires that Petitioner "provide ICE with written copies of requests to Embassies or Consulates requesting the

---

[1] Petitioner submitted one attachment to the Motion that contains all nine exhibits. (*See* Docket No. 4-1, Exs. 1-9). For clarity and ease of reference, the Court refers to the PDF page numbers of that document to identify specific pages, where necessary.

issuance of a travel document[,]" and "provide ICE with written responses from the Embassy or Consulate regarding your request." (*Id.* at 3).

### 2. *The Noem and Lyons Memos*

The Noem Memo provides two different tracks for removals of noncitizens to third countries,[2] determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien[3] may be removed *without the need for further procedures*." (*Id.* at 10-11) (emphasis added).

In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear of removal to the third country. (*Id.*). It states that

---

[2] Third country removal refers to "a removal to any 'country with a government that will accept the alien.'" *Dep't of Homeland Security v. D.V.D.*, 145 S. Ct. 2153, 2154 (2025) (quoting § 1231(b)(1)(C)(iv)) (J. Sotomayor, dissenting). "Third country removals are burdensome for the affected noncitizen, so Congress has sharply limited their use." *Id.* "They are permissible only after the Government tries each and every alternative noted in the statute, and determines they are all 'impracticable, inadvisable, or impossible.'" *Id.* (§§ 1231(b)(1)(C)(iv), (2)(E)(vii)). "Noncitizens facing removal of any sort are entitled under international and domestic law to raise a claim under the Convention Against Torture [("CAT")] . . ." which prohibits "returning any person 'to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.'" *Id.* The regulations governing the implementation of the CAT require that removal orders may not be executed "'in circumstances that would violate [the CAT].'" *Id.* (quoting 28 C.F.R. § 200.1 (2024)).
[3] The Court uses the terms noncitizen and alien interchangeably.

3

the noncitizen will generally be screened within twenty-four hours, after which USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).

The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

4

## II. DISCUSSION

### A. Legal Standard

Courts apply the four *Winter* factors (the "*Winter* Factors") in evaluating a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original). By contrast, a "prohibitory injunction" is one that seeks to preserve the status quo during the pendency of litigation. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014). "The 'status quo' refers to the legally relevant relationship *between the parties* before the controversy arose." *Id.* (quoting *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012)) (emphasis in original).

### B. Conclusions of Law

#### 1. The Court Has Jurisdiction over Petitioner's Habeas Petition

The Court incorporates by reference its analysis regarding its basis for jurisdiction. (*See* TRO at 9-10). No further argument was presented on this point.

#### 2. The Winter Factors Support Granting Petitioner's Motion

Turning to the *Winter* Factors, the Court finds that they weigh heavily in favor of granting Petitioner's Motion. As explained herein, the Court only departs from its analysis in the TRO as to the third country removal claim and otherwise incorporates

by reference the analysis therein. (*See* TRO at 11-14, 17-19). The Court addresses each of the *Winter* Factors in turn.

### a. Likelihood of Success on the Merits

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

Petitioner contends in his Petition that his detention by ICE is unlawful – given the absence of paperwork "discussing his reasons for the revocation," as well as the failure to provide an "interview[] about why he should not be detained" – thereby violating the Fifth Amendment's due process requirement.[4] (Petition, Docket No. 1 at 3). Petitioner also expresses fear that he will be "removed to a third country without notice or an opportunity to challenge the removal[,]" also in violation of the Fifth Amendment's guarantees of due process. (*Id.* at 4). In the Motion, Petitioner provides additional argument related to the conditions underlying his new OSUPs – which were issued after his release pursuant to the Court's TRO – contending that they violate the Administrative Procedure Act (the "APA"). (Mot. ¶¶ 33-37). The Court briefly touches on Petitioner's detention claim, before turning to his OSUP conditions claim and revisiting his third country removal claim.

#### i. Detention Claim – Due Process Challenge

Petitioner's Motion primarily repeats the same arguments – with respect to his "original" detention claim – which this Court has already considered and found meritorious. (*See* Mot. ¶¶ 19-32). The Court, therefore, incorporates by reference the analysis on this point from the TRO.[5] (*See* TRO at 12-14).

---

[4] He also contends in his Petition that the revocation of the OSUP failed to comply with applicable regulations, such that this amounts to a violation of the Administrative Procedure Act (the "APA"). (*Id.* at 3). The Court incorporates by reference its analysis on this point from the TRO. (*See* TRO at 11 n.11).

[5] Respondents present a terse argument that, given Petitioner's release from detention pursuant to this Court's TRO, that he now lacks Article III standing with respect to his detention claim. (Opp'n to Mot., Docket No. 12 at 3-4). This argument strains

### ii. OSUP Conditions Claim – APA Challenge

The APA provides that a reviewing court may hold "unlawful" any agency action that is "not in accordance with the law[,]" is "contrary to constitutional right" or "without observance of procedure required by law." 5 U.S.C. § 706. APA claims are subject to a six-year statute of limitations. *Corner Post, Inc. v. Board of Governors of Fed. Reserve System*, 603 U.S. 799, 825 (2024).

Petitioner presents argument pertaining to events that have occurred since his release, contending that some of the conditions imposed by the September 12 OSUP are violative of the APA. (*See* Mot. ¶¶ 33-37). Many of Petitioner arguments regarding the allegedly unlawful conditions placed on Petitioner pursuant to the September 12 OSUP, (*see id.* ¶¶ 33-36), are rendered moot by the September 22 OSUP, which removed some of the challenged conditions. (*Compare* September 12 OSUP *with* September 22 OSUP) (demonstrating that certain conditions – including the requirement to register in a substance abuse program and sexual deviancy program – were removed from the September 22 OSUP). Accordingly, the Court only briefly addresses Petitioner's argument that the two conditions which relate to securing travel documents "are written without sufficient specificity to put [Petitioner] on notice of his responsibilities under the new OSUP." (Mot. ¶ 37). Though Petitioner recognizes that "a person on an OSUP must make good faith effort to assist in securing a travel

---

credulity. Were this so, no court would issue a preliminary injunction following the grant of a TRO ordering a habeas petitioner's release, which is plainly not the case. *See, e.g., Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2650637, at *10 (entering preliminary injunction following grant of a TRO ordering habeas petitioner's release). Given the TRO's expiration on September 26, 2025, the necessity of further injunctive relief maintaining the status quo during the pendency of litigation means the claim is necessarily *not* moot. Furthermore, Respondent's citation to *Abdala v. I.N.S.* is unavailing. 488 F.3d 1061, 1064 (9th Cir. 2007). In *Abdala*, the habeas petitioner's detention claim was mooted *not* due to his release by court order, but by his ultimate deportation from the United States. *Id.* at 1065 ("As of the date of [petitioner's] deportation, there was no extant controversy of the district court to act upon and [his] petition was moot"). Accordingly, this case does not bear on the present matter.

7

document[,]" he contends that, as written, Petitioner lacks sufficient guidance to effectively "comply[.]" (*Id.*).

Respondents argue that, far from "new" conditions, these same conditions have been imposed on Petitioner since his original OSUP dating back to 2011 (the "2011 OSUP"). (Opp'n to Mot. at 4). Indeed, a comparison of the 2011 OSUP and the September 22 OSUP reveal that these conditions regarding travel documents are not new; rather, they have been imposed on Petitioner for nearly fifteen years. (*Compare* Docket No. 4-1, Ex. 3 (the "2011 OSUP") *with* September 22 OSUP). Respondents contend, therefore, that Petitioner's time "for mounting such a challenge lapsed nearly a decade ago." (Opp'n to Mot. at 4). The Court agrees. Given that these conditions have been in place for almost fifteen years, Petitioner's claim relating to these conditions is likely time-barred.[6] *Corner Post*, 603 U.S. at 825. As Petitioner has failed to demonstrate success on the merits as to this claim, the Court need not consider the remainder of the *Winter* Factors, where the first *Winter* Factor "'is a threshold inquiry and is the most important factor.'" *Baird*, 81 F.4th at 1042 (quoting *Env't Prot. Info. Ctr.*, 968 F.3d at 989).

                            iii.   Third Country Removal Claim – Due Process Challenge

The Court in its TRO concluded that Petitioner appeared to lack Article III standing with respect to his third country removal claim, as there was "nothing to suggest removal [wa]s 'actual or imminent,' [] nor that Petitioner [wa]s 'immediately in danger of sustaining some direct injury,' as a result." (*Id.* at 17) (citations omitted). As a result, the Court found he was not likely to succeed on the merits and denied the TRO with respect to this claim. (*Id.*).

---

[6] Furthermore, to the extent that Petitioner seeks to argue that the conditions, as *reimposed* under the September 22 OSUP, are unlawful pursuant to the APA, the Court concludes that Petitioner would be unable to sufficiently establish the *Winter* Factor of irreparable harm; where these are conditions under which Petitioner has been living for almost fifteen years, the Court is not persuaded that Petitioner would *now* face irreparable harm in the absence of injunctive relief setting those conditions aside.

8

"To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of the violation.'" *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("*Lyons*")). A plaintiff may do so by "'show[ing] that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy.'"[7] *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2011), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). A plaintiff may also do so by "'demonstrat[ing] that the harm is part of a pattern of officially sanctioned . . . behavior, violative of [] federal rights.'" *Id.* (quoting *Armstrong*, 275 F.3d at 861) (internal quotation marks omitted). "Where, as here, 'the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (quoting *Armstrong*, 275 F.3d at 861). "[T]he claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Id.*

Petitioner contends that he "satisfies the case and controversies clause because of the unique nature of ICE's overreach." (Mot. at 3). As explained herein, the Court agrees, finding that Petitioner has sufficiently demonstrated Article III standing to pursue this claim. Petitioner provides additional argument about the unconstitutional nature of the Noem and Lyons Memos and why, as a result, he has standing to seek

---

[7] While this test is framed in terms of a past harm already experienced, a plaintiff is not strictly required to have *already suffered* a harm in order to seek prospective injunctive relief. Rather, "the plaintiff must demonstrate that he has suffered *or* is threatened with a 'concrete and particularized' legal harm, *Lujan* 540 U.S. at 560, coupled with a 'sufficient likelihood that he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (emphasis added) (quoting *Lyons*, 461 U.S. at 111). Here, though Petitioner has not *already suffered* a due process violation pursuant to ICE's third country removal policy, as explained herein, he has sufficiently demonstrated the *threat* of this concrete harm, as well as the likelihood the harm will occur again in a similar way in the future, pursuant to ICE's policy as expressed in the Noem and Lyons Memos.

9

prospective injunctive relief. (Mot. ¶¶ 9-13; 38-41). As further explained below, Petitioner has demonstrated likelihood of success on the merits with respect to his claim that ICE's third country removal policy fails to provide to the Fifth Amendment's guarantees of due process. In other words, Respondents' "written policy" – which is inherently "'part of a pattern of officially sanctioned . . . behavior'" – appears to afford insufficient due process to noncitizens with orders of removal, thereby inherently "'violat[ing] . . . federal rights.'" *Melendres*, 695 F.3d at 997 (quoting *Armstrong*, 275 F.3d at 861). The fact that this injury is "'directly traceable to a written policy'" suggests that "'there is an implicit likelihood of its repetition in the immediate future.'" *Bates*, 511 F.3d at 986 (quoting *Armstrong*, 275 F.3d at 861). The Court is satisfied that, as a noncitizen with a removal order[8] – who is, therefore, inherently subject to the policies articulated in the Noem and Lyons Memos – Petitioner has sufficiently demonstrated "'that he is realistically threatened by a repetition of the violation'" at issue. *Melendres*, 695 F.3d at 997 (quoting *Lyons*, 461 U.S. at 109).

Significantly, this "claimed threat of injury" is nearly certain "to be redressed by the prospective injunctive relief." *Bates*, 511 F.3d at 986. The Court's order

---

[8] Regardless of whether Petitioner has been told "his removal is [] imminent[,]" (*see* Opp'n to Mot. at 6), the Court is satisfied that Petitioner's identity as a noncitizen with a removal order – as well as an order deferring removal to his home country, Tanzania (*see* Docket No. 4-1, Ex. 2 ("Deferral of Removal under the UN CAT") – makes him inherently at risk of removal under the terms of the policy expressed in the Noem and Lyons Memos. Notably, the District Court for the District of Columbia was forced to dismiss a similar habeas petition because ICE "executed its unlawful third country removal policy before the court could [even] issue a TRO[.]" (Mot. ¶ 14); *see D.A., T.L., I.O. D.S., and K.S. v. Noem, et al.*, 1:25-cv-03135, at *15 (D.D.C. Sept. 12, 2025) (Docket No. 41) (dismissing habeas petition where noncitizens were removed pursuant to Noem Memo's policy). Respondents unconvincingly contend that this injunctive relief is unnecessary where "Respondents already as a matter of law and protocol must 'afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution and torture.'" (Opp'n to Mot. at 7) (quoting TRO at 16 n. 14). Contrary to this argument, the Noem and Lyons Memos command ICE to *not* always afford the opportunity to contest removal to a third country.

10

1  would explicitly require that the due process guaranteed by the Fifth Amendment be
2  afforded to Petitioner, regardless of the policy expressed in the Noem and Lyons
3  Memos.  Petitioner, therefore, has demonstrated he has Article III standing to seek this
4  prospective injunctive relief.
5    Finding Article III standing satisfied, the Court turns to whether Petitioner has
6  demonstrated likelihood of success on the merits as to this claim.  As explained
7  herein, the Court finds Petitioner has demonstrated sufficient likelihood of success on
8  the merits.
9    "Immigration proceedings must provide the procedural due process protections
10  guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th
11  Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)).
12  "A 'noncitizen must be given sufficient notice of a country of deportation that, given
13  his capacities and circumstances, he would have a reasonable opportunity to raise and
14  pursue his claim for withholding of deportation.'" *Nguyen v. Scott, et al.,* No. 2:25-
15  cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v.
16  Nielsen*, 409 F.Supp.3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*,
17  424 U.S. 319, 349 (1976)).  "'Both the due process clause and the governing statute
18  place the burden on the government – regardless of whether the country of deportation
19  is designated during or after the removal hearing – to provide a meaningful
20  opportunity to be heard on asylum and withholding claims." *Id.* (quoting *Aden*, 409
21  F.Supp.3d at 1009).  "Failing to notify individuals who are subject to deportation that
22  they have the right to apply . . . for withholding of deportation to the country to which
23  they will be deported violates both INS regulations and the constitutional rights to due
24  process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  "'In the context
25  of country of removal designations, last minute orders of removal to a country may
26  violate due process if an immigrant was not provided an opportunity to address his
27  fear of persecution in that country.'" *Ngyuen*, 2025 WL 2419288, at *18 (quoting
28  *Najjar v. Lynch*, 630 Fed.Appx 724, 724 (9th Cir. 2016)).

11

Petitioner argues that he is likely to succeed on the merits of his due process claim as to ICE's current third country removal policy – as articulated in the Noem and Lyons Memos – given "that it may not provide any individualized notice to the Petitioner or an opportunity to respond before he is removed to a third country." (Mot. ¶ 38). Petitioner highlights that ICE "has taken the position that it does not need to provide *any notice* to the noncitizen if ICE and the State Department believe a third country's assurances that the noncitizen will not be tortured[,]" and that "if ICE or the State Department does not believe the assurances that the noncitizen will not be tortured, they will inform [them], *but not guarantee* an opportunity to seek an individualized fear interview." (*Id.*) (emphasis in original). In other words, Petitioner contends that "*both* tracks" for third country removals of noncitizens under the Noem and Lyons Memos "are unlawful[.]" (*Id.* ¶ 9) (emphasis in original).

The Court agrees that Petitioner has demonstrated that he is likely to succeed on the merits of his claim that the policy underlying the Noem and Lyons Memos fails to provide sufficient due process to noncitizens facing removal to a third country. Furthermore, the Court agrees that both tracks present due process issues, as explained herein.

The first track applies when the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures*." (*Id.* at 10-11) (emphasis added). It appears that this policy suggests that *no* further procedure – neither notice *nor* an opportunity to be heard – will be afforded to a noncitizen in instances where the third country to which the noncitizen will be removed has provided "assurances" that are "credible." (*See* Noem Memo at 10). As Petitioner notes, "neither ICE nor the State Department articulate how these 'assurances' could cover every possible reason a person might seek protection under

12

the [CAT]." (Mot. ¶ 38). The Court agrees. For example, even if there have been diplomatic assurances exchanged *between governments*, Petitioner highlights that it is "doubtful that these blanket assurances would cover non-state actors." (*Id.*). Reliance on such blanket assurances as a substitution for notice and the opportunity to be heard cannot comport with basic due process. *See Nguyen*, 2025 WL 2419288, at *18 ("A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation'") (quoting *Aden*, 409 F.Supp.3d at 1009). Where the "'due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims[,]" this approach is insufficient. *Id.* (quoting *Aden*, 409 F.Supp.3d at 1009).

The second track applies where no such assurances have been received – or, they were received, but they were not believed to be credible. (Noem Memo at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). Given that ICE will *not* affirmatively ask whether the noncitizen is afraid of removal, Petitioner contends that this "forc[es] the noncitizen to assert a right he may not know that he has." (Mot. ¶ 39). The Court agrees. "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional rights to due process." *Andriasian*, 180 F.3d at 1041. Accordingly, where ICE's stated policy is that it will *only* provide a reasonable fear interview when a noncitizen affirmatively asserts such fear, this fails to comport with due process. In short, "Petitioner has [] shown a likelihood of success on his claim that he cannot be

13

removed to a third country without sufficient notice and an opportunity to be heard, and that ICE's current third-country removal policy violates due process." *Nguyen*, 2025 WL 2419288, at *18. Nor did Respondents provide argument as to why the policy underlying the Noem and Lyons Memos *does* afford sufficient due process to noncitizens facing a third country removal.[9]

Furthermore, Petitioner's request "is in line with several courts" which have found this policy likely to be violative of due process. (Mot. ¶ 41); *see Nguyen*, 2025 WL 2419288, at *18 (granting preliminary injunction where the petitioner was likely to succeed on the merits that removal pursuant to the policy underlying the Noem Memo "would violate due process"); *Nadar Nadari v. Pamela Bondi, et al.*, No. 2:25-cv-07893-JLS-BFM (C.D. Cal. Sept. 3, 2025) (Docket No. 9) (same); *Delkash v. Noem*, 5:25-cv-01756-HDV-AGR, *1-2 (C.D. Cal. July 14, 2025) (Docket No. 6) (same). Accordingly, this factor weighs in favor of granting the Motion with respect to his third country removal claim.

### b. Irreparable Harm

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (" . . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further

---

[9] Respondents only argued that Petitioner lacked standing to bring this claim and that providing injunctive relief in this context would be "improperly" ordering "the government to follow the law." (Opp'n to Mot. at 6-7). The Court disagrees, particularly where they make no effort to address how ICE's *current policy* "follow[s] the law." (*Id.*).

14

showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ." *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation – with respect to both his wrongful re-detention claim and removal claim – the Court finds this factor weighs in favor of granting the Motion.[10] *Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6; *see also Nadari*, No. 2:25-cv-07893-JLS (Docket No. 9 at 5) (emphasizing that "being removed to a country where one may be tortured" makes irreparable harm "patently obvious"); *Nguyen*, 2025 WL 2419288, at *26 (emphasizing that "[i]t is beyond dispute that [p]etitioner would face irreparable harm from removal to a third country") (citing to *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025)). Furthermore, Petitioner's unique health challenges and the support he requires from his family and community further demonstrate irreparable harm in the absence of his requested relief. (*See generally* Mot. ¶¶ 1, 45-46); *see Hoac*, 2025 WL 1993771, at *6. Accordingly, this factor weighs in favor of granting the Motion.

### c. Balance of Equities and Public Interest

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac*, 2025 WL

---

[10] Respondents present no argument with respect to irreparable harm in their Opposition. (*See generally* Opp'n to Mot.).

1993771, at *6. "'Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" *Id.* (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird*, 81 F.4th at 1042. "'[I]t is always in the public interest to prevent the violation of a party's constitutional rights[,]" *id.* (quoting *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022), and "[t]he government [] 'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'" *Id.* (quoting *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983)).

Here, as before, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash*, 5:25-cv-01675-HDV-AGR, *10; (*see also* TRO at 19). Given Petitioner has demonstrated likelihood of success on the merits as to his constitutional claims, "the merged third and fourth factors [are tipped] decisively in his favor." *Baird*, 81 F.4th at 1042. The government "'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'" *Id.* (quoting *Zepeda*, 753 F.2d at 727).

In sum, the *Winter* Factors weigh heavily in favor of granting the Motion. The Court only departs from its analysis in the TRO with respect to Petitioner's third country removal claim, as explained herein, where the Court is satisfied that Petitioner has standing to bring this claim and has demonstrated likelihood of success on the merits. Accordingly, the Court **GRANTS** the Motion, thereby **ENJOINING** Petitioner's re-detention unless and until he is provided proper due process necessary for the revocation of an OSUP and **ENJOINING** Petitioner's removal to a third country without notice or the opportunity to challenge removal through a reasonable fear interview.

                3. *The Court Exercises Its Discretion and Waives Bond*

Rule 65(c) provides that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen*, 320 F.3d at 919). Furthermore, where requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public[,]" the court may waive the bond. *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F.Supp. 719, 738 (C.D. Cal. 1996)

Here, Respondents have presented no argument as to what harm it would suffer from being enjoined *either* from re-detaining Petitioner unless and until he is provided proper due process necessary for the revocation of an OSUP *or* from removing him to a third country without notice or the opportunity to challenge removal through a reasonable fear interview. *Johnson*, 572 F.3d at 1086. Requiring a bond in this context – where Petitioner has demonstrated likelihood of success on the merits with respect to both of his claims – would "have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca*, 936 F.Supp. at 738. Accordingly, the Court waives the bond requirement.

## III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion, thereby **ENJOINING** Petitioner's further detention unless and until he is provided proper due process necessary for the revocation of an OSUP and **ENJOINING** Petitioner's

removal to a third country without notice or the opportunity to challenge removal through a reasonable fear interview.  As explained herein, the Court waives the bond requirement.[11]

**IT IS SO ORDERED.**

Dated: September 26, 2025

                                      HON. WESLEY L. HSU
                                      UNITED STATES DISTRICT JUDGE

---

[11] Petitioner requests – without any argument – that the Court also find that Petitioner is "entitled to an award of attorney's fees under the Equal Access to Justice Act (['"]EAJA['"]), 28 U.S.C. § 2412[.]" (Mot. at Conclusion).  "The [EAJA] permits an award of reasonable attorney fees and expenses to a party who prevails in a civil action against the United States, unless the government's position was substantially justified, and if the party meets certain financial requirements." *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391, 1392 (9th Cir. 1986) (citing to 28 U.S.C. § 2412).  Here, where no party has yet prevailed in this civil action, the Court finds the request premature.  *See, e.g, Engle v. United States*, 152 Fed.Cl. 611, 614 (2021) (finding request for attorney's fees under the EAJA "premature" where there "has been no final judgment in this case as required by the EAJA").  Accordingly, the Court declines to award attorney's fees at this time.